It was denied on the part of the defendant that the deed from (184) Peter Fisher to the plaintiff's lessor and Jacob Fisher, bearing date in 1809, had ever been delivered, and if it had, the defendant contended that the plaintiff's lessor had by solemn acts and declarations disavowed title under it, and he offered in evidence first a bill of injunction sworn to and filed by the plaintiff's lessor in Rutherford court of equity in 1814, against Peter Fisher and others, alleging a want of title in the said Peter to the said land, and praying relief from the payment of the purchase money therefor. And to repel the effect of the compromise executed on 10 April, 1817, the defendant offered in evidence an instrument of writing executed on the same day and proved that it was executed at the same time by the plaintiff's lessor and the said Jacob Fisher, and insisted that the land in question was excluded from the compromise, and the matter left at large. The said instrument of writing was in these words: "It is hereby understood that the agreement made and *Page 146 
concluded by Samuel S. Ross and Jacob Fisher on 10 April, 1817, respecting their controversies, is to have no effect as to the suit of Mark Bird's Heirs v. Jacob Fisher and Peter Fisher and Samuel S. Ross, agent or attorney for said heirs; said suit is to stand in as full force as though there had no agreement taken place between said parties. This is acknowledged by the parties to be our act and deed on 10 April, 1817." The defendant also offered in evidence a record from Rutherford Superior Court, from which it appeared that the plaintiff's lessor as attorney in fact for Mark Bird's heirs instituted an action of ejectment on behalf of said heirs against the said Peter and Jacob Fisher for the land in controversy in the year 1812, and prosecuted the same until 1818, and afterwards. It was also proved on the part of the defendant that the administrator of Mark Bird recovered a judgment in the year 1810 or 1811 against Peter Fisher, that the plaintiff's lessor purchased said judgment and instructed the sheriff to sell the land in question under the execution on said judgment then in his hands, and that the sheriff did so, when Jacob Fisher became the purchaser and took a deed from the sheriff, dated in 1812, which deed the defendant offered in evidence and relied on. It did not appear that the land in dispute had ever been granted by the State.
(185) For the lessor of the plaintiff it was insisted that the seven year's possession under color of title made his title a perfect one. It was also insisted for him that by the agreement aforesaid and the deed taken by defendant from Jacob Fisher, and the deed from the sheriff to Jacob Fisher in 1812, the defendant was estopped from denying that the title was out of the State and in Peter Fisher.
For the defendant it was insisted that the deed from Peter Fisher to the plaintiff's lessor and Jacob Fisher had never been delivered, and if it had that the plaintiff's lessor had disavowed title in Peter Fisher by his bill of injunction, by his prosecuting a suit as attorney in fact for Bird's heirs for said lands against said Peter and Jacob Fisher, and by his purchasing the judgment aforesaid, and causing the land to be sold by the sheriff. And it was also insisted that it was a fraud in the plaintiff's lessor to cause the land in question to be sold to satisfy his own execution, and thereby mislead and entrap an innocent purchaser. The defendant contended further that the agreement of 10 April, 1817, relied on by the plaintiff's lessor was rendered inoperative as to the land in dispute by the other agreement executed at the same time, and that at most it could only raise an equity, and could not operate as an estoppel; that as the plaintiff's lessor had introduced the deed from Jacob Fisher to the defendant, which recited that said Jacob claimed under a deed and sale made by the Marshall for taxes, such recital was evidence for *Page 147 
the defendant and showed that said Jacob did not claim under either Peter Fisher or the plaintiff's lessor; that a seven year's possession under color of title without showing a grant from the State would not ripen an imperfect title into a perfect one; and that as to the sheriff's deed he, the defendant, was not estopped, as he claimed under both creditor and purchaser.
His Honor charged the jury that delivery was essential to every deed, but that when a deed was produced by him to whom it purports to have been made, the presumption of law was that it was rightfully in his possession, and threw upon the party denying its delivery to show by sufficient evidence that it never had been delivered. That if in this case the defendant had satisfied them that the deed from Peter Fisher to the plaintiff's lessor Ross, and Jacob Fisher never had been (186) delivered, they would lay it aside altogether in the consideration of the case, that if, on the contrary, they should be satisfied from the evidence that it had been delivered, then the plaintiff's lessor and Jacob Fisher became tenants in common, and each was estopped to deny title in Peter Fisher so far as the other was concerned, and that the estoppel extended to all claiming under them. That possession under the deed from Peter Fisher for seven years ripened the title into a good and valid one, and rendered it unnecessary for the plaintiff's lessor in this case to produce a grant from the State. His Honor instructed the jury further, that so far as Jacob Fisher or those claiming under him were concerned, the plaintiff's lessor was not deprived of any right which Peter Fisher's deed vested in him, by the filing of the bill in equity or the other facts relied on by defendant's counsel that the deed of agreement made in April, 1817, between the plaintiff's lessor and Jacob Fisher, if it did not operate as a common law conveyance, was an acknowledgment on the part of Jacob Fisher that the plaintiff's lessor was a tenant in common with him, at least from that time in the land mentioned in the agreement (and the land now in controversy was so mentioned) and estopped the said Jacob and all claiming under him from denying it; that as to the defeasance to that deed relied on by the defendant, it related to the suit then pending in the name of Bird's heirs against the Fisher's, and not to the land now in dispute. That as to the recital in the deed from Jacob Fisher to the defendant that the land was derived under a deed from the Marshall, that deed bore date before the compromise and agreement of 1817, and could not alter the relation in which the parties stood to each other at that time. The lessor of the plaintiff had a verdict and judgment, and the defendant appealed.
The case does not set forth the evidence which was given respecting the execution of the deed from Peter Fisher to Jacob Fisher and the lessor of the plaintiff, and therefore it is impossible for (187) us to say positively whether there is or is not error in that part of his Honor's instruction which relates to the delivery of the deed. Execution includes delivery and when it is stated as a fact that "its execution was proved," we must understand that such evidence was offered as established its delivery prima facie and until this evidence was contradicted or impeached. If it were then certainly the production of the deed by one of the grantees, accompanied with testimony of long possession under it, is a very strong circumstance to confirm the prima facie proof of delivery.
If this action had been brought against Jacob Fisher it is plain, we think, that the plaintiff would be entitled to recover. Not only had the lessor of the plaintiff and the said Jacob entered into the possession under one and the same claim of title, a deed from Peter Fisher to them as tenants in common, but on 10 April, 1817, after they had been thus in possession for more than eight years, they executed an instrument which they called an agreement under their hands and seals for the avowed purpose of settling and concluding all controversies which had theretofore existed between them, whereby they do acknowledge, declare and agree "that they, the said Samuel and Jacob, are to be joint owners and equally interested in all the land and tracts of land conveyed by Peter Fisher to the said Samuel and Jacob." It could not be permitted to either of them, holding possession after this solemn declaration, until the rights thereby acknowledged should be divested or changed, to set that possession up as hostile to the title of his cotenant. It follows, we think, that the defendant, having succeeded to Jacob Fisher's possession, and coming into that possession under him, is equally estopped from denying the right of the lessor of the plaintiff.
The declaration in Jacob Fisher's deed to the defendant that he had a title to the whole — or the ignorance of the defendant with respect to the right of the lessor of the plaintiff at the time when that deed was made, does not prevent the rule of law from attaching. The estoppel applies to the defendant by reason of his priority with and under Jacob Fisher, not because of personal ill faith. Jacob Fisher's deed was indeed a color of title under which a possession by the defendant for a (188) sufficient length of time, would divest the title of the plaintiff's lessor. But until that title was divested it was sufficiently established against Jacob Fisher and those coming in afterwards under Jacob Fisher by showing the avowed cotenancy with him. *Page 149 
A brief notice will be all that is necessary of the other points in the case. The statements made in the bill in equity filed by Ross could only be material as evidence to show that Peter Fisher had not a good title at the date of his deed. But this would not effect the title of the plaintiff's lessor because the defendant was not at liberty to dispute that title. The construction which the judge placed on the proviso or memorandum attached to the agreement was the only one it could bear. As to the marshall's deed — and the sale by the sheriff under the judgment of Bird's heirs against Peter Fisher, which judgment had been bought by Ross — it is enough to say that these, as well as the bill in equity, all occurred previously to the execution of the judgment of 10 April, 1817, and all claims and contests under or by reason of them, were by that instrumentconcluded.
We are of opinion that the judgment ought to be affirmed.
PER CURIAM. Judgment affirmed.